**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

**IN RE: TABITHA M. BRANNAN**                     **Case No. 06-32392-DOT**
      Chapter 13 Debtor

   **TABITHA M. BRANNAN**
        Plaintiff
v.                                               Adv. Proc. No. **06-03125-DOT**

   **ALAN BRYMER,
   CAITLIN BRADLEY,
   GREAT NORTHERN TRADING COMPANY,
   CARL M. BATES,
   GLADSTONE ENTERPRISES, INC.**
       Defendant

**GLADSTONE ENTERPRISES, INC.**          **- Counter-Claimant**
v.
**TABITHA M. BRANNAN**                   **- Counter-Respondent**

**GREAT NORTHERN TRADING COMPANY**       **- Cross-Claimant**
v.
**ALAN BRYMER, TRUSTEE, and**            **- Cross-Respondents**
**ALAN BRYMER, individually,
CAITLIN BRADLEY**

<u>**MEMORANDUM OPINION
ON MOTIONS TO ALTER OR AMEND APRIL 14, 2008 OPINION**</u>
(<u>**Not for publication**</u>)

The court's initial memorandum opinion in this adversary proceeding was entered on

April 14, 2008. That opinion set out the court's findings of fact and conclusions of law on issues

presented by plaintiff-debtor's five-count complaint following trial. However, for reasons

apparent from the opinion, the court did not enter a judgment order. Subsequently, all parties

have filed motions that effectively request the court to alter or amend the court's conclusions that

were unfavorable to them and enter a final judgment order. A status hearing was held on May 7,

1

2008. After hearing argument at that hearing, the court took all pending motions under

advisement. Still more responses were filed by the parties after the hearing.

**Procedural History Following Issuance of Memorandum Opinion of April 14, 2008.**

PLAINTIFF DEBTOR'S MOTION FOR JOINDER

On April 22, 2008, debtor filed a motion for joinder of the two trustees on Great

Northern's deed of trust as parties defendant to this adversary proceeding. (Docket No. 75)

DEFENDANT GREAT NORTHERN'S MOTION TO AMEND OR ALTER THE FINDINGS

On April 23, 2008, Great Northern moved the court to enter judgment pursuant to the

memorandum opinion. It also asserted that the court erred 1) in applying provisions of the Truth

In Lending Act, 15 U.S.C. §§ 1601 *et seq*, (TILA) to the April 27, 2005, sale and 2) in directing

the joinder of the trustees under Great Northern's deed of trust rather than dismissing Great

Northern as a defendant. The motion was accompanied by a memorandum in support. (Docket

Nos. 77, 78)

BRYMER DEFENDANTS' MOTION TO AMEND AND ENTER JUDGMENT

On April 24, 2008, Brymer, Gladstone and Bradley ("the Brymer defendants") moved the

court to enter judgment and/or amend the memorandum opinion, listing several errors: 1)

allowing debtor to exercise her TILA right of rescission after trial, 2) failing to find that debtor's

TILA claim is barred by a one year statute of limitations, 3) finding that the debtor's sale of her

property was a credit transaction subject to TILA, 4) finding that Brymer was individually liable

on the Great Northern note, 5) failing to enter judgment on Gladstone's counterclaim. This

motion was supported by a memorandum. (Docket Nos. 80, 81)

PLAINTIFF SENDS DOCUMENTS TO RESCIND TRANSACTION OF APRIL 27, 2005

2

On April 29, 2008, plaintiff debtor filed with the court a "response" to the court's memorandum

opinion to which was attached evidence that on April 21, 2008, she had sent notice of rescission

to the Brymer defendants of the April 27, 2005, transaction. (Docket No. 83)

PLEADINGS FILED AFTER HEARING OF MAY 7, 2008

On May 19, 2008, plaintiff debtor filed a motion and memorandum of law requesting that

the court strike the post-trial motions of defendants and also that the court reconsider the rulings

1)  that plaintiff failed to prove fraud by defendants Brymer and Gladstone and 2) that plaintiff

did not have standing to bring the fraudulent conveyance action. (Docket No. 90) Debtor's

motion also requested that the court find that the filing of this adversary proceeding served as a

notice of rescission under TILA. Great Northern responded to debtor's motion on May 21, 2008,

by filing an objection to the motion, and the Brymer defendants filed a response to debtor's

motion on June 19, 2008.  (Docket Nos. 92, 93)

**<u>Discussion and Conclusions.</u>**

LEGAL STANDARDS FOR MOTIONS TO ALTER OR AMEND JUDGMENTS

The federal procedures applicable to motions for amendment of court orders, often

referred to as motions for reconsideration, are found in Federal Rule of Bankruptcy Procedure

9023 and Federal Rule of Civil Procedure 59. *See* 10 *Collier on Bankruptcy* ¶ 9023 (Alan N.

Resnick & Henry J. Sommer, eds, 15th ed. rev. 2008). In order for a bankruptcy court to alter or

amend an order or judgment under Fed. R. Civ. Proc. 59, a party movant must show that the

reconsideration is necessary on at least one of three grounds: (1) manifest error of law;

(2) manifest error of fact; or (3) newly discovered evidence.  *See Jefferson Bank. v. Devault Mfg.*

*Co. (In re Devault Mfg. Co.)*, 4 B.R. 382, 385 (Bankr. E.D. Pa. 1980); *see also Hutchinson v.*

*Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993); *see generally* Fed. R. Civ. P. 59(a)(1)(B), formerly

Fed. R. Civ. P. 59(a)(2) (stating that a rehearing can be granted "for any of the reasons for which

rehearings have heretofore been granted in suits in equity . . .  "). Thus, in practice, the grounds

for motions seeking new trials boil down to either an alleged manifest error of law or fact or

some type of alleged newly-discovered evidence. 10 *Collier on Bankruptcy* ¶ 9023 (Alan N.

Resnick & Henry J. Sommer, eds, 15th ed. rev. 2008); 12 *Moore's Federal Practice – Civil* §

59.13[3] (Matthew Bender 3d ed.).

Although the present motions are addressed to the court's memorandum opinion rather

than to a judgment, the same standards are applicable. The court finds that the motions must be

granted in part due to a new defense raised by defendants and due to other information revealed

in the post-trial pleadings.

PARTIES' MOTIONS TO ALTER OR AMEND

**Complaint Counts I and II, fraudulent conveyance and fraudulent transfer.**

In these counts, plaintiff debtor sought to set aside her transfers to defendant Brymer of

cash and the real property that is the subject of this proceeding. Debtor alleged the transfers were

fraudulent transfers avoidable under Bankruptcy Code §§ 548 and 550. The court found that

debtor could not prevail on these counts because under § 522(h) and (g) she did not have

standing to assert her bankruptcy trustee's avoidance powers.

Debtor's motion filed May 19, 2008, asks the court to reconsider the ruling as to the real

property transfer only (count I). While the court recognizes that the ruling leads to an

unfortunate result, it is the correct result under the statute, and there is no basis to reconsider.

Accordingly, debtor's motion to reconsider as to count I will be denied.

4

**Complaint Count III, truth in lending violations by Brymer, Gladstone and Great
Northern.**

        <u>Relief Requested and the Court's Previous Memorandum Opinion</u>

        Debtor alleged that defendants Brymer, Gladstone and Great Northern violated TILA and
the federal Home Owners Equity Protection Act (HOEPA), which served to amend TILA. Her
complaint sought to rescind her real property transfer and the Great Northern loan and also
requests an award of damages and attorney fees.

        The court found that debtor's transfer of the realty to Brymer on April 27, 2005,
constituted an equitable mortgage under Virginia law, that TILA was applicable to that
transaction, and that debtor had a three year period from settlement to rescind the transaction.
The court found that the Great Northern loan transaction that went to settlement on May 31,
2005, was between Brymer and Great Northern; therefore Great Northern did not violate TILA
with respect to debtor. Accordingly, debtor, who was not a party to the transaction, could not
rescind the Great Northern loan, and her earlier attempt to rescind it was not a rescission of the
Brymer transfer. The court recognized that debtor was still within the TILA three year rescission
period for the Brymer transfer. The court's ruling anticipated that debtor would rescind this
transfer following issuance of the court's ruling. However, because she had not yet done so, the
court reserved the issuance of a judgment order regarding debtor's rescission count. The court
made no findings with respect to debtor's HOEPA allegations.

        As mentioned previously, following the court's issuance of the opinion on April 14,
2008, debtor sent notice of rescission of the Brymer transaction to defendants Brymer,
Gladstone, and Bradley.

<u>Defendants' Motions to Alter or Amend</u>

Great Northern's position may be summarized as follows: 1) the court erroneously construed the April 27, 2005, transfer of property from debtor to Brymer as an equitable mortgage; and 2) even if the transaction was an equitable mortgage, TILA does not apply because debtor presented no evidence that Brymer or Gladstone regularly extend credit in a manner that would qualify them as creditors under TILA. It argues that the transfer was not an equitable mortgage because it "is simply not a mortgage or consumer credit transaction." (Great Northern Memorandum, docket 78, at 4.) Great Northern also argues that the transaction cannot be an equitable mortgage under Virginia law unless debtor owes a debt to Brymer, and if debtor did not intend to reacquire the property a mortgage does not exist. Finally, Great Northern states that debtor presented no evidence that she ever intended to repay the money paid to her for the forty percent beneficial share of her property.

Great Northern's second argument that Brymer and Gladstone do not qualify as creditors under TILA was not raised previously or considered by the court in the memorandum opinion. Defendants assert that Regulation Z of TILA, 12 C.F.R. § 226, requires debtor to present evidence that at least five consumer credit home loan transactions were entered into by the creditor within the past calendar year. Debtor failed to present this evidence.

In their motion, defendants Brymer and Gladstone make an argument similar to that of Great Northern to the effect that an equitable mortgage has not been proven, and even if so, TILA does not apply to them. In addition, they argue the court lacks authority to order a new trial based upon debtor's having served a TILA notice of rescission after issuance of the opinion of April 14, 2005. They argue that the provisions of Fed. R. Civ. P. 59(d) authorizing a court to

6

grant a new trial do not allow the court to grant a new trial to permit debtor to invoke TILA

under the circumstances here because the granting of a new trial is not proper to allow a party to

introduce evidence that did not exist at the time of trial. Finally, Brymer and Gladstone assert

that any TILA damages are barred by a one year statute of limitations and that Gladstone is

entitled to judgment on its counterclaim, seeking a declaration that Gladstone is holder of

debtor's remaining sixty percent interest in the subject realty.

<u>Debtor Plaintiff's Motion to Strike and to Reconsider</u>

With respect to count III, plaintiff debtor responded to the court's opinion and to the

motions of the defendants by first arguing that the defendants' position that Brymer and

Gladstone are not creditors under TILA should not be considered by the court because the

"'creditor question' involves 'legal defense[s] to a claim'" that should have been raised no later

than the time of trial. Fed. R. Civ. P. 12(h)(2). citing *Eberhardt v. Integrated Design & Constr.,*

*Inc.*, 167 F.3d 861, 871 (4th Cir. 1999). Because the issue was first raised in defendants' post-

trial motions, plaintiff debtor argues that it should not be considered by the court.

Plaintiff debtor further argues that TILA and HOEPA govern the debtor's transaction

with Brymer and Gladstone. As noted above, defendants' argument includes a statement that

TILA does not apply unless the creditor has entered into five qualifying credit transactions

within the past calender year. Debtor counters this argument by asserting that in view of the high

effective interest rate on the debtor's transfer transaction, the definition of creditor supplied by

15 U.S.C. § 1602(f) applies: a creditor is a "person who originates 2 or more mortgages . . . in

any 12-month period  or any person who originates 1 or more such mortgages through a

mortgage broker . . . ." 15 U.S.C. § 1602(f). According to debtor, the evidence also supports a

finding that Brymer or Gladstone were brokers.

With respect to the court's ruling that allowed debtor to give notice of TILA rescission to

Brymer and Gladstone after trial, debtor argues that the court might also determine that the filing

of the complaint in the adversary proceeding served as a valid rescission notice, citing *Jones v.*

*Saxon Mortgage, Inc.*, 537 F.3d 320 (4th Cir. 1998); *Dawson v. Thomas (In re Dawson)*, 2008

WL 1700419 (Bankr. D.D.C. April 9, 2008).

Court's Conclusions as to Count III

*Equitable Mortgage.* The court finds no basis to reconsider the previous finding in the

memorandum opinion, which explained in detail the basis for ruling that debtor's property

transfer to Brymer or Gladstone was an equitable mortgage. Defendants' argument that there was

no debtor-creditor relationship is without merit. The existence of an equitable mortgage puts the

transferee/grantee of the transaction in a creditor position with debtor indebted to return the

loans advanced to her. Debtor conveyed the property as security. That this was the intent of

debtor and Brymer is supported by clear and convincing evidence of record. Moreover, the

factual basis for equitable mortgage was alleged in debtor's complaint, and even though this

theory was not specified in the complaint, it was an obvious possibility under the circumstances.

Defendants were not prejudiced by debtor raising this theory at trial. They have had ample

opportunity to contest the court's ruling, and they have not argued that there was other evidence

they might have presented on the issue.

To reiterate the court's previous conclusions, debtor had a continuing obligation to pay

forty percent of the equity in her residence to Gladstone. The parties acted at all times as though

8

the residence was security, and the documents surrounding the transaction show the parties'

intent to secure payment of the forty percent by debtor's placing title into the trust and then

assigning the forty percent of her equitable interest in the trust to Gladstone. Debtor was a

mortgagor in the transfer and Gladstone/Brymer the mortgagee. This conclusion is bolstered by

the facts that a) the transaction was couched in terms of a trust agreement, b) the debtor's initial

deed to Bradley and Brymer as trustees was to serve as Brymer's "temporary form of security"

(Tr. 173), and c) debtor's second deed conveyed title to Brymer as trustee.

_Notice of TILA Rescission._ The court agrees with debtor's argument raised in the post-

trial motion, which is supported by the authorities cited above, that the filing of the adversary

proceeding was sufficient notice of her intent to rescind under TILA. *See also Taylor v.

Domestic Remodeling, Inc.*, 97 F.3d 96, 99 (5th Cir. 1996). The notice of rescission was plainly

stated in paragraph 23 of debtor's amended complaint. Accordingly, the finding in the opinion of

April 14, 2008, that the right of rescission had not been exercised by debtor at the time of trial

will be amended. Rather, the court now finds that the debtor's complaint satisfied the

requirement for notice of rescission to the Brymer-Gladstone-Bradley defendants.

_Brymer and Gladstone As Creditors under TILA._ The more difficult TILA issue is raised

by defendants' argument that Brymer or Gladstone do not meet the definition of creditors for

purposes of the statute. Although this particular issue was not raised by defendants before or at

trial, the court will allow the defense to be raised under the current motions to alter or amend.

First, defendants' are correct that there is nothing in the record to support debtor's

assertion that Brymer and Gladstone were brokers under provisions of 15 U.S.C § 1602(f). That

leaves the issue of whether Brymer or Gladstone were persons who originated "2 or more

9

mortgages . . . in any 12-month period . . . ." 15 U.S.C. § 1602(f). While the evidence in this case

reveals that Brymer and Gladstone had done a number of real property deals similar to the one in

this case, the only specific evidence of transactions in which their participation  might be

considered in the nature of originating mortgages are the ones here at issue.

The memorandum opinion of April 14, 2008, set out the facts surrounding debtor's

transactions with Brymer/Gladstone. The court concluded that their arrangement constituted a

consumer mortgage transaction but did not consider whether it might be considered as two such

transactions.

The initial pertinent documents were executed by debtor on April 27, 2005. These

included a) an agreement and declaration of trust with debtor as grantor and defendant Bradley

as trustee, b) a deed conveying title to debtor's realty to Bradley as trustee, c) an assignment of

forty percent beneficial interest in the trust from debtor as assignor to defendant Gladstone as

assignee, and d) a letter agreement signed by debtor only, which included a statement that she

was transferring to Gladstone a forty percent interest in her property. The court previously ruled

that both Bradley and Brymer were trustees. In exchange for debtor's execution of the

documents, Brymer or Gladstone issued a check in the approximate amount of $7,500.00 that

was used to cure the delinquency in debtor's first deed of trust held by Chase Manhattan

Mortgage Corporation. The documents signed by debtor on April 27 were not recorded. Brymer

intended that the deed would not be recorded but was to serve as his "temporary form of

security" for the transaction.

The second phase of debtor's transaction with Brymer/Gladstone took place on May 31,

2005, when settlement took place on the Great Northern second deed of trust loan. In that

transaction, debtor executed a second deed of her property, this time conveying title to Brymer as trustee. This deed was recorded as part of the Great Northern settlement. Brymer had previously told debtor that he was taking out this loan, and he agreed to debtor's request that she receive $25,000.00 of the proceeds. The original principal loan amount was $74,725.00. In the settlement, debtor received the sum of $25,000.00 with the rest of the loan proceeds less costs going to Brymer/Gladstone. Debtor did not sign any documents indicating that she was obligated under the Great Northern loan. Rather, Brymer was the obligor under this loan and Brymer and Bradley were liable as guarantors. Nevertheless, with respect to the Great Northern loan, Brymer made clear and debtor understood she was borrowing these funds and that it was her obligation to repay her share of the loan pursuant to the initial trust documents of April 27.

In summary, debtor executed and delivered two different deeds of her realty. The first deed conveyed title to Brymer/Bradley as trustees, which they took as security for their advancement of $7,500.00 to the first deed of trust holder on April 27, 2005. Debtor's second deed conveyed title to Brymer as trustee and was used by him as a basis to secure the Great Northern loan on May 31, 2005. From the proceeds of Brymer's mortgage loan transaction debtor borrowed $25,000.00 from Brymer. The court has found the effect of debtor's transfers was to create an equitable mortgage with debtor as mortgagor and Brymer/Gladstone as mortgagees. The mortgage secures the loans advanced to debtor.

But was this two mortgages? While such an interpretation of the transfers has a certain logical appeal, the court is unwilling to stretch the equitable mortgage concept to such an extent. Notwithstanding that there were two separate disbursements of funds, debtor entered into a single contractual arrangement with the defendants. Her first deed was withdrawn and replaced

11

by the second deed at settlement on May 31. Although the second deed of trust loan was not

mentioned in the original papers signed by debtor, it was within contemplation of the

transaction. Moreover, at that time everyone understood that upon the sale of her property,

debtor was to repay the funds she had received. The fact that Brymer/Gladstone took out their

own mortgage does not equate to two consumer mortgages for debtor.

Accordingly, in light of the new argument raised by the defendants, the court concludes

that debtor cannot invoke the provisions of TILA because the mortgagees Brymer/Gladstone are

not creditors for purposes of 15 U.S.C. § 1602(f). The defendants' motions to alter or amend will

be granted with respect to the court's previous holding that debtor could invoke provisions of this

statute, and judgment will be entered for defendants on this count.

Nevertheless, the court will enter judgment to the effect that the subject real property

stands as security held by Brymer/Gladstone/Bradley as an equitable mortgage for repayment of

all amounts owed by debtor under the April 27, 2005, trust agreement and supporting

documents, including the $25,000.00 advance from the Great Northern loan on May 5, 2005.

**Counts IV, V, fraud and punitive damages.**

Debtor alleged she was defrauded by Brymer, Gladstone, and Bradley in transferring her

real property to Brymer on April 27, 2005. The court found that debtor had failed to prove by

clear and convincing evidence that these defendants committed fraud or acted willfully or

maliciously. Debtor's motion for the court to alter or amend these rulings must be denied. One of

the main problems with the allegations of fraud is that the evidence demonstrates that Brymer

made it clear to debtor what he was after in the transaction. Debtor was well aware of what she

was getting into as she went through and initialed each paragraph of letter agreement. Brymer

12

was no doubt overreaching, but he made his intentions clear. He did not mislead or defraud

debtor with respect to the transactions of April and May, 2005.

Debtor argues that Brymer's fraud is evidenced by his later assertions that debtor was

obligated to repay not just the $25,000.00 she received but all of the Great Northern loan. It is

apparent that in this position Brymer is attempting unilaterally to modify the parties' agreement.

The court previously described this as a contractual dispute because Brymer is asserting a

position that seems to be at variance with the written documents and is disputed by debtor. The

amount that debtor must repay under her equitable mortgage is a separate issue.

**Defenses of Brymer, Gladstone, and Bradley.**

The Brymer defendants disputed debtor's fraud related counts (I, II, IV, V). They asserted

that debtor's TILA damage claim was barred by a one year statute of limitations; also that they

were entitled to a refund of the money they had paid to debtor. Gladstone filed a counterclaim

requesting that the court require debtor to transfer to Gladstone the interest she had retained in

the realty under the parties' original agreement. The court essentially deferred ruling on these

other issues pending debtor's rescission of her transaction with Brymer.

The court has ruled against debtor on the TILA claim and on the fraud related counts.

With respect to Brymer/Gladstone's entitlement to a refund of the amounts they advanced to

debtor, the court's discussion above supports defendants on this claim.

Finally, in accordance with the earlier equitable mortgage discussion, there is no basis at

this time to require debtor to transfer any interest in the property to Brymer/Gladstone.

Judgement will be entered in favor of debtor on this claim.

**Cross-Claims of Great Northern.**

Great Northern's cross-claims asked for judgment against Brymer for the amount due under his second deed of trust note and for judgment against Brymer and Bradley under their guaranty of the note. The court ruled that Brymer and Bradley were personally liable and indicated that judgment on the note could appropriately be entered against them. However, see further discussion of this issue below.

Under the heading of Great Northern's cross-claims, the court's memorandum opinion also considered an issue concerning Great Northern's deed of trust lien on debtor's real property that had not been raised by any party. This issue was in relation to count III (the TILA count) of debtor's amended complaint. In count III debtor sought rescission of her transfer of realty with respect to *all defendants* premised on the defendants' failures 1) to make disclosures required under TILA or HOEPA, 2) to give her notice of her right to rescind, and 3) to provide copies of the documents. In the count III prayer debtor asked the court to order defendants to tender back to her a warranty deed to her residence and to remove all clouds on title, including Great Northern's second deed of trust.

The issue raised by the court concerned the fact that Brymer signed Great Northern's note and deed of trust in his individual capacity, whereas he took title under the deed from debtor only as a trustee. The court concluded that because Brymer did not hold a fee simple interest in the property, he could not convey such an interest to Great Northern by way of a deed of trust. Consequently, the court concluded, "it appears that Great Northern has no interest in the residence." (Memo. Opn. Apr. 14, 2008, p. 24.)

In the memorandum opinion, the court agreed with Great Northern's assertion at trial that its deed of trust could not be removed from the property because debtor had not named the

14

trustees on the deed of trust as defendants in the adversary proceeding. The court recognized that Virginia law required joining the trustees on the second deed of trust as necessary parties to this litigation. At the same time the court ruled that the debtor could cure this defect by amending her complaint to join the trustees as parties to this proceeding.

In their motions to alter or amend, the defendants have submitted no authorities that seriously challenge the court's finding with respect to the validity of title granted by Brymer under the Great Northern deed of trust. (They refer to it as a "scriveners' error.") However, Great Northern challenges the court's ruling that would allow debtor to amend the complaint to add the trustees as parties because of the bar of the statute of limitations. No explanation was given for this assertion. Of course, under the court's ruling above on the count III counts these matters are now of no moment.

As stated previously, judgment will be entered for all defendants with respect to the TILA allegations. With this ruling, there is nothing left in the complaint by which the court may enter any judgment against Great Northern regarding the validity of its security. Accordingly, Great Northern must be dismissed from the case. Debtor will have to challenge Great Northern's lien in another way, either by a new adversary proceeding or perhaps even by objecting to Great Northern's proof of claim, if one is filed. Great Northern's motion to alter or amend will be granted to the effect that it will be dismissed from the case.

**Jurisdiction to Enter Judgment of Great Northern Against Brymer and Bradley.**

Great Northern's dismissal as a party to this adversary proceeding leaves the court without jurisdiction to enter judgment for Great Northern on Brymer's note as the claim is no longer a core or non-core related matter within the bankruptcy court's jurisdictional limits under

15

28 U.S.C. § 157. Thus, Great Northern's cross-claim against Brymer and Bradley will be

dismissed.

A separate order will be entered in conformity with this opinion.

SIGNED: _____

/s/ Douglas O. Tice Jr.
DOUGLAS O. TICE JR.
CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

Copies to:

Tabitha M. Brannan
10009 Grass Market Court
Fredericksburg, Virginia 22408
*Debtor*

Augustus C. Epps, Jr., Esq.
Christian & Barton, L.L.P.
909 E. Main Street, Suite 1200
Richmond, Virginia 23219-3095
*Counsel for Debtor*

Debra D. Corcoran, Esq.
P.O. Box 29421
Richmond, Virginia 23233
*Counsel for Debtor*

Teddy J. Midkiff, Esq.
Goff & Midkiff, PLLC
10310 Memory Lane, Suite 2-C
P.O. Box 313
Chesterfield, Virginia 23832
*Counsel for Gladstone Enterprises, Inc., Caitlin Bradley, Alan Brymer*

Christopher G. Hill, Esq.
Roy M. Terry, Jr., Esq.
DurretteBradshaw, PLC

Main Street Centre
600 E. Main Street, 20th Floor
Richmond, Virginia 23219
*Counsel for Great Northern Trading Company*

Carl M. Bates
P.O. Box 1819
Richmond, Virginia 23218-1819
*Chapter 13 Trustee*